Good morning, Your Honors. Daniel Staudter for Appellant Monaghan. I believe there's three issues that would be helpful for this Court's review. The fees for the past FOIA request, the exhaustion of administrative remedies, and the two statutory FOIA fee waiver provisions. The issue of the fees for the past FOIA request that are raised in the brief, I think it's important to understand that the agency didn't invoke the unpaid fees for the prior request until after this request that's at issue was before the Court. And, in fact, January 13, 2010, was the first time that the agency raised the unpaid fee issues. That's set forth in the agency's supplemental exhibits at page 44. Sotomayor, I'm really confused. I'm sorry? I'm confused. I thought that this case concerned only the last request. No, it does not. There's the reason that the agency one of the reasons that the agency has said that they and that the Court dismissed the case was that Mr. Monaghan had not paid for a prior FOIA request, completely different FOIA request. And what they're saying is there is a rule that says if you have not paid for prior FOIA requests, then we cannot process your new request. And that's a very reasonable rule. Why didn't he have to appeal the failure to comply with his prior request and imposition of fees in order to exhaust that issue? He he I'm sorry. He for the first request, he abandoned that. He no longer processed that request. He filed a new public records request. And he did not need to take any actions on the old request. It was he had some money owed. And when he submitted the new request, the agency did not respond to it. And then he appealed the fact that they hadn't responded to that. He didn't have to. He could have gone right to court. But he gave them a second bite of the apple. And he said, I'm appealing that you haven't responded. And they still didn't respond. At that point, he invoked what's called constructive exhaustion of administrative remedies. But just to clarify. Okay. Substantively, the second request asked for the same documents as the first request, but added a fee waiver. Is that correct? That is correct. All right. So the and I had thought that we were only litigating the second request. That's the dismissal of his second request is the error that we're litigating. The second request, he realized he wanted to have a fee waiver. He put that into his FOIA request. That does not relieve him from having to pay for the fees for the first request. And he's paid for those. The only question is, should they have dismissed his second request? And the reason that was erroneous based on his prior request is they hadn't told him, we are going to not process future requests if unless you pay for the prior ones. Once he was told. Where do you have the notion that that's what the district court was relying on? Where did that come from? Excuse me? I'm not aware of any of the district court relying on any earlier request. Where is that? Yes. The district court's holding in the second ruling sets out that he has not paid for his earlier request. And it's the, let's see, the. This is the order on the fee waiver or the order on the motion to dismiss? The order on the motion to dismiss. That was the basis, that he had not paid for his. They couldn't dismiss him for failure to pay on the current request because the current request had a public interest fee waiver request. And as Pollack and all of the cases that flow from that say, you cannot, you cannot say you haven't exhausted if someone has raised a fee waiver request and then you can appeal that issue to your, to your honors. And that's how you deal with the current request is it's just a standard. I don't see anything in the district court's motion to dismiss that relies on any prior waiver. I mean, I think you're sort of fighting off an issue that isn't even there. Okay. Well, let's. Okay. Assuming that the government is not going to suggest that that's the reason, if we're talking about the current request. Well, just where is it? You just said it was in the district court's order. Okay. And I'm looking at the order and I don't see it. Okay. Could you just tell us where it is? Yes. Yes, I will. Thank you. It is on page ER-4 where we're talking about this $864. That is for the prior FOIA request and the fact that that is the prior request can be demonstrated by looking at the, that figure, that 864, it's for a prior request. But it would be for this request, too, if he didn't get his fee waiver, right? Because the same documents are being asked for. For, no, for this request where he has a fee waiver. Well, we don't have a fee waiver. That's the question. Request. Do we have a fee waiver? I'm sorry. For this request where he has a, there is a fee waiver request. That issue is then brought up on appeal. You don't dismiss for lack of exhaustion of administrative remedies. The remedies, all the procedures have been followed. But that seems to be what happened. You're the one who's filling in this hole that says it was for the prior request. No, no. It's set forth, for example, the supplemental exhibits at page 44 references that this. All right. Why don't we ask the government that? Why don't you go on with the question? Okay. Okay. So then we turn to the current request. And he had exhausted his administrative remedies from the constructive exhaustion statutory basis. Once you have this. When you say constructive exhaustion, I don't really know what you mean.  I'm sorry. The statute says that one way to get to Federal court is to follow a request and appeal procedure to the end. Right. And the other way to exhaust is if the agency fails to meet its statutory deadlines, the statute says you have constructively exhausted and may go directly to court. I understand what you mean. So in this case. That is the agency failure to meet its deadline. That's right. Twice, for the request and the appeal. Therefore, once you have exhausted your administrative remedies, you can't on-ring that bell. It's like. It's not being constructively exhausted. It's that you don't have to exhaust. They call it exhaustion. It's just a different. It's a statutory exhaustion, if you will. And the point is, it's like when someone reaches adulthood when they're 18. You can't negate that. You can't change that by subsequent activities. So he's exhausted constructively. Now, does he owe money for past requests or for this one? That turns. Unless the government tells us otherwise. Let's forget the past requests. Okay. So then we get to the two fee waiver statutes that are at issue. And I would suggest that they're both different. There's the automatic waiver of search-only fees. And that one is, that's the 552A4A. And it says if the agency misses the statutory deadlines, this is a new provision from the Open Government Act. If they miss their statutory deadlines, they can't charge the search fees automatically. It doesn't require a request. It doesn't require any kind of administrative action. It's just that. Except in unusual circumstances. Exactly. Unusual circumstances are defined as being 10 days. So it can, by the agency, under the statute. Well, unusual circumstances is defined otherwise. No, no. It comes with regard to if it was originally defined in the statute about 10 days, but it isn't defined as being 10 days. Currently, as the Open Government Act stands, there's two types of tolling. One is called extraordinary circumstances. And that requires a remand back to the agency. That's what happened in Pollack. You can get lots of time if you can show extraordinary circumstances. But that's a judicial function. And then there's unusual circumstances that are still defined under the statute as giving an agency an extra 10 days and only that. Now, Mr. ---- I'm only disputing you in that the statute contains, as I understand it, a section that says unusual circumstances means, and it doesn't say it means 10 days. It's in the context of a 10-day extension. But there is a definition of unusual circumstances. That's true. There are two sections. And the section that applies what happens, let's put it this way. The effect of unusual circumstances is that you get 10 days. Mr. Monaghan waited 10 days, and then he still didn't get an answer. So the point is that it doesn't give the agency more remedy than 10 days. He gave him the 10 days. And so then the point is that upon their missing the deadline, he then has an automatic waiver of his search fees. He did raise that at the district court proceeding at the right time. After his public interest fee waiver was denied, which would give him a broader no payment of duplication costs, he said, that's been denied, and because that's been denied, I still am entitled to an automatic waiver of my search fees under this statute, and I don't see any reason that that was not raised timely and appropriately. I also would suggest that I think the public interest fee waiver should have been a public interest fee waiver, and that's because of this. The public interest fee waiver, unlike any other portion of FOIA, says not just de novo review, but de novo review on the administrative record. Now, the key case from this circuit is the Friends of the Coast Fork decision. And what that says is that there's a limited administrative record that you are looking at. And clearly, that cannot include things after a case is filed, because what would the administrative record mean if you could either side continuously add to it? So what? Roberts, on the public interest fee waiver, I have a merits question. Yes. We don't have a whole lot of a blog here, but it looked as though the information he was giving the public wasn't about 9-11 and Flight 77. It looked as though the information he was giving the public was about his personal struggle to get the records and get the fees waived. I can't see why that would fit the public interest waiver. When we look at that analysis for the public interest test that you're referring to, we look to the Friends of the Coast Fork for guidance, and if the requester meets the prima facie test, then the burden shifts to the government. I have no problem with bloggers getting the same kind of rights to records as old-fashioned journalists. My problem is, what do you blog about? Is it just your personal problems, or is it something of public interest? And in this case, if you look at the record at supplemental – if you look at the record at – excuse me – at 94 and 95, you see that this gentleman is maintaining a nationally acclaimed archive of all of the agency's records. I didn't see the evidence of it. I just saw him saying so. In the case of – in this particular situation, the prima facie case was met, but there was no refuting government. I didn't see where the prima facie case was met. It's set forth in – I mean, he just says so, but he doesn't show me. Ordinarily, oh, suppose I wanted to know if Instapundit is a blog that addresses matters of general public concern. I would just type instapundit.com and see what kind of stuff they had and how hard it was to get and whether it was a matter of public concern. And if they had a case pending, they'd probably give me 40 or 50 pages of Instapundit for a bunch of dates and be easy to judge. I didn't see that here. What he did, which is interesting, is he referred to the websites. Now, personally, I would have attached the documents from the websites, and that's a problem. You know, he was pro se, and he thought it was sufficient to give the web links. Problem is, web links change every day, and what's there one day may not be another. What he did as a pro se satisfied the prima facie test, because if you look at page 94-95, he sets out the links and what they say at the time that he filed the case as a pro se. He met the prima facie test of Friends of the Coastwork by saying, if you go to these web pages at this particular time, they will show you that I have a bunch of information that not only is important to understanding September 11th, but that is relied upon by national media and books and all kinds of other dissemination vehicles. And what the government said about that wasn't really that it wasn't true. They sa- It was a sub-blog of some other blog, and maybe it wouldn't be accessible. Not only is that information inaccurate, but it wasn't in the administrative record. The point is, anything filed by the government after the case, after the filing of this action is not the administrative record. Sure, both parties would have loved to pour all kinds of new documents, but the fact that the statute says the administrative record is the limit of review means the day you file a court case, it- Well, I don't understand that. If he gave a citation to his blog, it must have meant for people to go look at the blog in order to judge his fee request. And they went and looked at the blog, and they said in their substantive discussion of why it wasn't a public fee waiver qualified, something about the blog, which presumably they learned by looking at the blog. So I don't see what's wrong with that. Your Honor, the point is that they could have done that during the response to his appeal when the administrative record was open. Well, that's a different issue. That's whether they're late. But, but now, they – I mean, you're saying their whole letter isn't in the administrative record, is that what you're saying? I'm saying that everything that the government filed was too late because the administrative record closed as soon as he filed his court action, and therefore, as you've – the Court said in the Ninth Circuit, Friends of the Coast Fork, the record stops and the government's chance to put these kinds of things in play is gone. I don't know if you've got it on that assumption. For example, I look at page 94. Information presented at this archive and obtained by the requester has also recently been reported by the Beacon News, a member of the Chicago Sun-Times News Group. Well, he doesn't give me the Beacon News, and he doesn't even say that the Beacon News took the information from his blog. As far as I know, he reports that Flight 77 crashed in Pennsylvania, and the Beacon News also said that Flight 77 crashed in Pennsylvania. He – what he does – the two tests, really, I call digest and disseminate. He has those two factors nailed by way of – he maintains this archive, this archive that's electronic, and that's set forth in the third to the last paragraph of 94. And then he's saying that all these national outlets disseminate the information and cite to it in their various national publications. And I think – Not exactly. He doesn't say the blog was cited. He says information has been cited. Information presented at this archive and obtained by this requester has been reported in this documentary that's televised, Rescue Me. And so what he's saying is – I have some personal notes about this case where I have cited A versus B. You have written a brief in this case where you've cited A versus B, but I did not disseminate my personal notes to you, and you did not get your citation from my personal notes. It seems to me when I read what he wrote here, it's consistent with that. He is indicating, though, that it was distributed to particular disseminators. That's what's set forth, and that the disseminators then put this information out into the world. I think that when you look at the public interest requirement, at least for the prima facie test under the Friends of the Coast Fork, if the government had anything to say to challenge these assertions, they had two opportunities, once in response to the request and secondly after the appeal. The fact that they were silent and took no action means the record has to just stand for what it is. And I admit that you could put premises where it could be made stronger. The only question then is, does it satisfy the prima facie test of Friends of the Coast Fork? And I would submit that. Kagan. It appears in the record that AR9 and 10 and 8 and all that is from the blog. Is that what that is? Well, there's a problem there is it is material that the party submitted after the fact that is not submitted in the ‑‑ it was not part of the administrative record and it is not clear at all. And it is my position it should not be ‑‑ Who submitted that? It was ‑‑ it's interesting. The government submitted it and called it a joint stipulation of the administrative record. The pro se agreed because he didn't understand that the record stopped at the time. But this ‑‑ But you're reneging on the stipulation. That's the point, isn't it? You're saying all this is post hoc and it's not in the record. But it was stipulated to be part of the record. The pro se stipulated it was part of the record. In fact, he relied on the information before the district court and then he lost and now you're saying, well, it wasn't part of the administrative record. Well, the interesting thing about that point is that the administrative record has to be fixed regardless of what people say later on. You're way over your time now. Can I just say one last point? The administrative record has to close even if both parties said, here's new stuff we want to put in, it doesn't matter, whatever the record was. Well, I don't know. Okay. Thank you very much. Thank you. We'll give you a minute in rebuttal. Good afternoon. May it please the Court. Adam Flake for the United States. Do you first want to clear up this question of whether there's anything in this case that deals with some earlier record ‑‑ earlier request? I'm happy to, Your Honor, and I share Your Honor's point of view. I'm genuinely confused and surprised that it has come up at this point. I was not anticipating it. As far as the government is concerned, the failure to ‑‑ the dismissal was not based on anything having to do with any earlier request. It dealt with the failure to pay the fee with regard to this request. If I could direct Your Honor's attention to page ER63, I believe it is. Administrative record 63. It's excerpts of record 63 or AR5. And that's where the agency lays out kind of the history of this case, because what happened is he made an earlier request. We asked for fees. He dismissed that earlier request. He came back and filed the instant case. And admittedly, untimely, we're not disputing that this response is untimely. And therefore, you're not disputing that there was constructive exhaustion, at least with regard to the exhaustion piece? Yes, Your Honor. And I think part of the confusion in this case is that the words constructive exhaustion have been used imprecisely, because the one result of constructive exhaustion is you're allowed to bring a suit into the district court, because you have constructively exhausted your administrative remedies. But I don't believe that it follows from that, that once you have constructively exhausted your administrative remedies, you're thereby absolved from forever from paying any fees. And there are ---- Except that the statute, at least with regard to search fees, seems to amalgamate the two pretty much, no? It seems to what, Your Honor? Amalgamate the two in a new statute, which says, and if you're late, not only can you file a district court case, but you don't have to pay fees, except in unusual circumstances. Yes, Your Honor. That's correct. And if the ---- and so our untimeliness does, you know, it gives rise to the ---- I referred to it just for our own, if I may, for our own convenience, I referred to it as the fee preclusion statute versus the fee waiver statute, just to make it easier to talk about. With respect to the fee preclusion statute, our untimely response did make it so that we, if it operated, if the exception didn't operate, and if he didn't waive the argument, then, yes, we would be barred from ---- Possibly waive the argument. Well, he waived the argument because he ---- It was an alternative argument about why he didn't waive fees, and he ---- and as he notes, it was a lesser argument, i.e., it got him less. So first he tried the fee waiver, and then on the motion to dismiss, when you were saying, then he raised an alternative argument about why he didn't know at least the most of the fees. That's correct, Your Honor. What happened was, so he filed his complaint in the district court in November, and then the parties ---- the court set a briefing schedule, and the briefing schedule was the first issue that's going to be addressed in the briefing is the issue of fees, and we had an entire round of briefing about that, and a year went by, and we talked about the fee waiver and the merits, the respective merits of the fee waiver. Well, as he explained, he wanted the fee waiver. That's what he really wanted, so that's what he was arguing. Then when that didn't work, he had an alternative argument for a lesser relief. You know, I don't ---- the court didn't allow him to bring his arguments piecemeal and say, I'm going to ---- Wasn't the motion to dismiss separate and later? Yes, Your Honor. So he didn't get to answer it? Yes, Your Honor. The first brief that he filed was explaining why he was entitled to not have to pay his fees. And we responded to that, and he responded back. He filed a motion. Were there a cross motion for summary judgment at that point? Yes, Your Honor. And the court granted our motion. All right. And then when we filed a motion to dismiss because nothing was happening in the case, he didn't get his fee waiver, and the case wasn't moving, we said dismiss this case, there's nothing left. He said, oh, by the way, I shouldn't have to pay fees. And the district court said, well, you ---- Shouldn't have to pay most of the fees. Or shouldn't have to pay some of the fees. And the court said, you should have brought that attention when we were arguing about fees a year ago instead of bringing it up at this late date. And the court declined to ---- well, I shouldn't say the court declined to address it. The court, first of all, found it waived, and then it went ahead to be safe and it did address it on the merits, and it found that the free preclusion statute did not apply because unusual circumstances were present in this case. It just seems like a strange waiver ruling. And I don't know how, isn't it? What do we ---- how do we review that? Is it abuse of discretion or what? I mean, he raised it in the district court as a response to a motion to dismiss. It was not the same argument or coincident with the relief that he was seeking earlier, and I don't see what's wrong with it. I would dispute that it's not coincident with the relief that he was seeking. When he was seeking, I mean, it wasn't ---- it didn't embody all of the relief. It didn't involve ---- embody all of the fees that he was seeking. But he ---- we had a round of briefing about whether or not he should have to pay fees. And the Court said, you could have ---- you should have addressed this a year ago in our round of briefing about whether or not you had to pay fees. And you have waited to do that until this late date when it's basically a defense you're raising to the government's motion to get rid of this case, and it's too late for you to raise it now. And ---- But the Court wholly waived it, right? Isn't that what happened? Wasn't it a ---- didn't he wholly waived it, waived this argument? Yes. That's correct, Your Honor. Okay. All right. What about the ---- is it your position with respect to this fee preclusion that the government doesn't have to tell anybody that there are unusual circumstances, it could just sit down and do nothing, and then if somebody sues them and says, I don't have to pay, then they can say there are unusual circumstances? Your Honor, no. But that's what happened here. I'm leaving aside the waiver issue for the moment. I mean, it is an accurate statement that the government did not respond until they got sued here, Your Honor. And didn't respond that there are unusual circumstances and, therefore, the fee preclusion doesn't apply. Never said there are unusual circumstances and, therefore, you're going to have to pay fees even if otherwise you wouldn't have to pay fees. Never said that. No, it didn't, Your Honor. And the reason it didn't is what we were talking about earlier, which is this unusual ---- this fee preclusion issue kind of came up out of the blue several years after a ---- not several, but a year. I know. But more generally, more generally, if he ---- let's suppose he had put this in his statute, and he said, I don't have to pay fees. I mean, certainly he didn't have to exhaust this. You're arguing an exhaustion argument that he had to tell the ---- he had to tell ---- No, Your Honor. All right. So I'm asking you what your vision is of this statute. Is your vision of the statute that you just wait until you get sued for not coming forward with the information, and then when somebody says, you know, I want the information now because you never answered me, and you say, oh, now we want our fee, you never had to say that there were unusual circumstances? Your Honor, I think that ---- In other words, the statute came out of a place where we know that you did have to make the ---- and with regard to the notice for an extension of time, you had to say we want an extension because there were unusual circumstances.  Right? This was meant as an enforcement mechanism for that because it wasn't happening. So now they say, well, if you don't ---- if the government just blows you off, then they can't collect any fees. But you're saying, well, we can not get the extension, not tell them about the unusual circumstances, and then later when they sue us, we can still get the fees. That's correct, Your Honor. And I would just point out that ---- So how does that work to enforce the requirement that you get an extension if you want one and tell people about the unusual circumstances at that point? Your Honor, the ---- in order to have the ---- in order to get saved from free preclusion, the court has to ---- the government has to convince the court that unusual circumstances do apply. But it doesn't have to tell the parties and it doesn't have to invoke it the way it does have to invoke it with regard to getting the extension of time. I mean, you agree that to get the extension, you have to say there are unusual circumstances and we're going to get an extension. That's correct, Your Honor. To the claimant at the time of the ---- while the fee request is pending, before anybody gets to court. Yes, Your Honor. That's correct. Okay. But you don't have to do that, you're saying, with regard to this fee waiver. Correct, Your Honor. The fee waiver will never operate as any kind of an enforcement mechanism for the other because you can simply blow off the first one and still get your fee waiver. So it's never going to do any good. No, I disagree, Your Honor. And the reason is it's built right into the definition of unusual circumstances. It says, as used in this subparagraph, unusual circumstances means but only to the extent reasonably necessary to the proper processing of the particular request.  And we need to ---- The definition of unusual circumstances does apply to the extension of time, right? The definition of unusual circumstances does apply to the extension of time. Right. So I correct that under your interpretation, although you're supposed to tell people if you're going to be late and say there are unusual circumstances and ask for what's a limited extension of time, I gather that the agency wasn't doing that, which is why you can't do it, you can't collect fees. But the way you're interpreting it, it will never be a stick because you ---- the same unusual circumstances that you could have claimed the first time you can claim now. So why ever ask for an extension based on unusual circumstances and tell people you're going to be late and have a limited extension? Well, a couple of things, Your Honor. First of all, the fee preclusion statute applies to all of the time limits that are laid out in the remainder of that portion of the statute, not just unusual circumstances. It talks about all of the time limits. If the agency blows any of those time limits, then we are precluded from charging fees with this one exception, which is unusual circumstances. And as I understand it, in order to invoke unusual circumstances, we need to convince the district court that these unusual circumstances, only to the extent reasonably necessary to the proper processing of the particular request, met one of these three criteria. And if we are not able to do that, we will lose. Okay. Do you want to briefly address the merits of the fee waiver ---- what you're calling the fee waiver issue? Certainly, Your Honor. Before I address the merits, there's still some free-floating confusion, I think, about whether the agency's response is ---- the plaintiff, as I understand it, is asking this Court to ignore the agency's response altogether because it was untimely. And I would point out to the Court as ---- I would reiterate what I pointed out in my brief, but there are many, many, many cases that say the constructive exhaustion does not automatically mean that you are forgiven from paying your fees. I pointed out that there's some tension because the Pollack case says the arguments that these claims are constructively exhausted and says you have to pay your fees anyway. Some other cases speak of the failure to pay fees as constructive exhaustion itself. So the case law could be a little bit more clear. But if the Court's not allowed to look at what the agency did here, the demand for fees to begin with, we would be in a very strange posture right now because we wouldn't be ---- we wouldn't know that there were fees owing. We wouldn't have any idea what was going on. The way that we know what is going on is because of the agency's response that incidentally that the plaintiff ---- Kagan. Well, I wonder what ---- I don't know the answer to this, but I wonder whether ---- what's slightly unusual about this case maybe is that really the key request in the last request was the fee waiver. I mean, on the cases that you're talking about, about fee waivers, was there a fee that was responded to? And so the ---- so that the ---- that wasn't responded to on time, but there was really no dispute about the fees. I think that is ---- if I can ---- I don't ---- I just don't know. But I ---- it just strikes me that this one is somewhat unusual in that the whole ---- what we're looking at this document for, if anything, is why they didn't give them a fee waiver, because that's the only ---- that's really the crux of what it was asking for. Okay. One moment. Why don't, instead of just spending the time, why don't you just write us a letter? I apologize, Your Honor. I'm not able to ---- I'm not ---- I agree with the Court that this is a slightly unusual situation, but I don't think that the particular posture of this case somehow excludes ---- completely excludes the agency from demanding fees at any point there. Well, that's not the question. The question is whether the response to why he is not entitled to a fee waiver as part of the record in terms of our, you know, our usual deference or whatever to the agency's reason. Is this response something as to why you're not giving him a fee waiver, something that we should be taking into account? I'm not sure how the Court could exercise any form of review if whether or not he was owing fees, if we weren't allowed to have any evidence of whether or not he owed fees. And I ---- All right. So what about the substance quickly, because you're out of time? Quickly or not, I don't know what to say quickly other than the district court addressed this in great ---- the agency addressed it in great detail, the district court addressed it in great detail. At these what looks like attachments from the ---- from his blog on pages AR-08 and AR-09 and so on, and unlike Judge Kleinfeld, it seems to me that there was a certain amount of substantive information in there. And he does talk to some of that as a FOIA request, but he also talks about other things, and including FOIA requests, you know, responses, not just his dispute with the agency, and assertions about GPS satellites and, I mean, there's a certain amount of substantive stuff that's in here, which gives some credence to the notion that if he had more substantive information, he could give ---- he could put more substantive stuff out. Your Honor, the ---- I would just point out that the district court did address this in detail, and he found that he did. Well, not in detail, in about a sentence. No, Your Honor, not this issue. On pages ER-52 through 53, that's the district court's substantive analysis of he addresses each of the four factors to show whether or not this particular fee waiver is in the public interest. And he finds that the defendant or, excuse me, that the plaintiff simply did not meet his burden under McClellan of putting forth any evidence to support that. What difference does it make that he doesn't own and control the 9-11 blogger website and that he's a sub-blogger with any larger blogger? What does that mean? I think that the district court was looking at whether or not he could actually disseminate this information. Why not? And if it is not being put on the ---- in the Internet, to ---- it's hard to think of a physical analogy, but it's more like, you know, putting documents in a box in a warehouse somewhere and you say ---- But it is on the Internet. Right. But it's ---- and that's why I say it's hard to ---- I don't understand this point for a slightly different reason. Suppose somebody has a regular slot in a newspaper for their op-ed. Every week or every other week, they do an op-ed and the newspaper publishes it, and that's their arrangement. Even though they don't publish the newspaper and they don't control any content in the newspaper other than their own op-ed, which is published every other week, I don't see why their op-ed would not be a regular source of public information. Well, Your Honor, I think the difference is, I think what the court was finding here was not ---- the problem wasn't that he didn't control it. It was that it wasn't widely disseminated. It was that he didn't put forth any ---- he didn't submit any evidence that showed that the way that he was doing this information was making it available to the wider public. But anybody knows that if you put in the name Monaghan 9-11, I bet you, you will get to these things. Well, I'm not sure about that, Your Honor, and it's certainly not in the record. It certainly was not in the record before the district court ---- But why isn't it? I mean, why is the fact that it's a sub-blog of a blog have anything to do with the answer to that question? Because the district court did find that it was not widely accessible. I thought there was an issue about whether you'd actually find it if you type Monaghan and 9-11. I don't recall any ---- I didn't want to do it myself because I thought it's improper for me to do a personal investigation. But I vaguely remember that there was something like that in the record or the briefs. Do you happen to know? Off the top of my head, I don't remember anything about running examples of particular Google searches as being what ---- But all the agency said and all the district court said, as I understand it, is that the plaintiff does not own or control the 9-11 blog or website, and he states no law demonstrating that his commentary on a sub-blog within a larger blog satisfies the requirement that he's able to disseminate information to the public. No law. That's what he says. That's it. That's correct. That's correct, Your Honor. On that particular ---- on that one point of the ---- of his ability to disseminate to the public, that is what the district court held, Your Honor. Okay. We're out of time. Thank you very much. Thank you, Your Honor. We'll give you one minute, but you don't need to use it because we're tired. Thank you, Your Honors. I just want to say that there's not a waiver of the automatic fee waiver provision. It was raised, as the Court has alluded to, in response to the motion to dismiss at the appropriate time and place. But I would suggest there was a waiver of the government's unusual circumstance argument, and they could have used the extraordinary circumstance provision. That's the provision that Congress gave them to use when they wanted more time when you're in court. The extraordinary circumstances is a provision that they could have put in play and they should have put in play if they wanted more time. Okay. Thank you both very much for a very helpful argument and a very interesting case. Thank you, Your Honor. Monaghan v. FBI is submitted, and we are adjourned. Thank you. All rise.
judges: Smith, Kleinfeld, Berzon